# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

GINO J. JONES, :

                Plaintiff,

-vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
                Defendant. :

Case No. 3:09-cv-080

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury.

*Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment

or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on June 22, 2004, alleging disability from September 1, 1998, due to bipolar depression, arthritis, and high blood pressure. (Tr. 49-51; 62). Plaintiff's application was denied initially and on reconsideration. (Tr. 35-37; 39-40). A hearing was held before Administrative Law Judge Melvin Padilla, (Tr. 524-59), who determined that Plaintiff is not disabled. (Tr. 8-26). The Appeals Council denied Plaintiff's request for review, (Tr. 4-6), and Judge Padilla's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Padilla found that Plaintiff met the insured status requirements of the Act through June 30, 2006. (Tr. 14, ¶ 1). Judge Padilla also found that prior to the expiration of his insured status, Plaintiff had severe bilateral knee osteoarthritis, history of polysubstance abuse with continued alcohol use and alleged remission of crack cocaine and marijuana use, depression since October 2003, and anxiety disorder diagnosed in November, 2004, but that he did not have an impairment or combination of impairments that met

3

or equaled the Listings. (Tr. 15, ¶ 3; Tr. 16, ¶ 4). Judge Padilla found next that prior to the expiration of his insured status, Plaintiff had the residual functional capacity to perform a limited range of medium work. (Tr. 19, ¶ 5). Judge Padilla found further that prior to the expiration of his insured status, Plaintiff was able to perform his past relevant work as an automobile-radio-repairer, inspector/quality assurance operator, and box inspector. (Tr. 24, ¶ 6). Judge Padilla then used sections 203.28 through 203.31 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that prior to the expiration of Plaintiff's insured status, there were a significant number of jobs in the economy that Plaintiff was capable of performing. (Tr. 24, ¶ 10). Judge Padilla concluded that prior to the expiration of his insured status, Plaintiff was not disabled and therefore not entitled to benefits under the Act. (Tr. 26).

In his Statement of Errors, Plaintiff does not challenge the Commissioner's conclusions with respect to his alleged exertional impairments. (Doc. 10). Accordingly, this Court will focus its review of the record on the mental health evidence.

The transcript contains Plaintiff's voluminous treatment records from the Veterans' Administration Health Care Facility (VA) dated November 9, 1998, through January 25, 2008. (Tr. 191-512). Those records reveal that aside from receiving treatment for various medical conditions including osteoarthritis of his knees and low back pain, Plaintiff received intensive treatment for cocaine addiction between November, 1998, and April, 1999. *Id.* In addition, Plaintiff has received treatment in the VA's mental health clinic beginning in October, 2003. *Id.* When Plaintiff was first evaluated in the mental health clinic, a therapist noted that Plaintiff admitted to drinking but denied drug use, his mood was sad/depressed, his affect was guarded, he was alert and oriented, his speech and recall were normal, and his insight was fair. *Id.* Plaintiff's diagnoses were identified as bipolar

4

disorder by history versus dysthymic disorder with anxious mood and narcissistic features; he was assigned a GAF of 55. *Id.*

Plaintiff was evaluated by psychiatrist Dr. Razik at the VA on December 1, 2003, at which time Dr. Razik reported that Plaintiff's mood was depressed, his affect was congruent to his mood and had normal range, his thoughts were logical and goal directed, and he was alert and oriented. *Id.* Dr. Razik also reported that Plaintiff's memory was intact, he showed good judgment and insight, he had stopped using crack cocaine two years ago, and that he drank two beers every two days plus two to three drinks of liquor three times a month. *Id.* Dr. Razik identified Plaintiff's diagnoses as dysthymia and rule out major depressive disorder; he assigned Plaintiff a GAF of 50. *Id.* Over time, Dr. Razik reported that Plaintiff's mood was improving with medication. *Id.* On August 11, 2004, the counselor at the VA noted that Plaintiff was anxious and that his speech was rapid and pressured. *Id.*

On October 19, 2004, examining physician Dr. Oza noted, *inter alia,* that Plaintiff reported he drank four beers a week, denied drug use, and that he had a high school education. (Tr. 144-46). Dr. Oza reported that Plaintiff appeared slightly hyper with flight of ideas, he moved constantly, and that he did not appear depressed. *Id.*

Examining psychologist Dr. Flexman reported on November 17, 2004, that Plaintiff had been diagnosed with bipolar disorderin 1998, he was very vague when answering questions, he saw a psychiatrist once every three months at the VA, he drank a six-pack per week, and that he had been clean from marijuana and cocaine since 2002. (Tr. 152-54). Dr. Flexman also reported that Plaintiff's general body movements were fidgety, his speech was appropriate, his affect was expansive with no lability, and that his attitude was anxious during the evaluation. *Id.* Dr. Flexman

5

noted that Plaintiff's mood was anxious, he was alert and oriented, his attention span and concentration were good, and that his effort was fair. *Id.* Dr. Flexman also noted that Plaintiff's intellectual functioning was judged to be average, his memory was good, his judgment was fair, and that obsessive thinking concerning somatic or other psychological problems was judged to be out of proportion with reality and somatization was present. *Id.* Dr. Flexman identified Plaintiff's diagnoses as anxiety disorder NOS and undifferentiated somatoform disorder and he assigned him a GAF of 60. *Id.* Dr. Flexman opined that Plaintiff's ability to understand, remember, and carry out short, simple instructions, his ability to make judgments for simple work-related decisions, and his ability to sustain attention were slightly impaired, and that his abilities to interact with others and respond appropriately to work pressures were moderately impaired. *Id.*

Plaintiff continued to receive mental health treatment at the VA health care facility. (Tr. 191-512). In November, 2004, psychiatrist Dr. Mahajan noted that Plaintiff reported feeling very irritable, hopeless, and worthless, that he was pleasant, his speech was mildly rapid but not pressured, his thought process was logical, and that he had vague complaints of auditory or visual hallucinations which he (Dr. Mahajan) did not believe were true psychotic symptoms. *Id.* Dr. Mahajan also noted that Plaintiff continued to use alcohol and that his symptoms could be from that. *Id.*

On February 4, 2005, consulting neuropsychologist Dr. Stegman at the VA noted that Plaintiff reported that he started drinking alcohol at age 15, his last drink was over the weekend when he drank three twelve-ounce beers, that he had not used drugs over the past several years, and that he has received outpatient mental health treatment on and off over the past six years. *Id.* Dr. Stegman also noted that Plaintiff graduated from high school, he stammered and stuttered

periodically but his speech was otherwise normal, he was oriented, his affect was slightly constricted, and that his mood was mildly anxious. *Id.* Dr. Stegman reported that Plaintiff made vague references to experiencing visual hallucinations in the past, his judgment processes were intact, and that his insight appeared somewhat limited. *Id.* Dr. Stegman identified Plaintiff's diagnoses as rule out generalized anxiety disorder, depression NOS, and rule out alcohol abuse; he assigned Plaintiff a GAF of 75. *Id.*

On March 7, 2005, Plaintiff saw psychologist Dr. Papadakis who reported that Plaintiff had a high level of psychomotor agitation, difficulty with speech, flight of ideas, pressured speech, and that he was not able to concentrate. *Id.* Dr. Papadakis also reported that Plaintiff had a difficult time explaining himself and was extremely anxious; he assigned Plaintiff a GAF of 45. *Id.*

Plaintiff continued to receive mental health treatment at the VA. *Id.* On April 15, 2005, Dr. Stegman administered an MMPI-2 which Dr. Stegman reported was of limited usefulness because Plaintiff endorsed a significantly high number of symptoms across a broad range of psychological problems and therefore the profile did not reflect a consistent picture of Plaintiff's current difficulties. *Id.* Dr. Stegman also reported that Plaintiff was alert and oriented, his mood and affect appeared mildly anxious, and that there was no evidence of psychomotor agitation or retardation. *Id.* Dr. Stegman noted that Plaintiff's speech had a slightly pressured quality and that his thought processes were intact. *Id.* Dr. Stegman identified Plaintiff's diagnoses as generalized anxiety disorder (provisional) and rule out alcohol abuse and he assigned Plaintiff a GAF of 70. *Id.*

Dr. Papadakis reported in December, 2005, and January, 2006, that he had been treating Plaintiff for two years, his diagnoses were bipolar disorder, and anxiety disorder, that his

7

GAF was 45, and that his severe mental disorder magnified his medical disability. (Tr. 173-90). Dr. Papadakis also reported that Plaintiff was not able to perform any mental work-related activities, that he experienced disorientation to time and place, memory impairments, change in personality, disturbance in mood, and emotional lability and impairment in impulse control. *Id.* Dr. Papadakis noted that Plaintiff had incoherence, loosening of associations, illogical thinking, numerous depressive symptoms, and numerous manic symptoms,. *Id.* Dr. Papadakis opined that Plaintiff was markedly limited in activities of daily living, had moderate difficulties in maintaining social functioning, marked deficiencies of concentration, and that he had three or more repeated episodes of decompensation. *Id.*

Examining psychologist Dr. Bromberg reported on March 4, 2008, that Plaintiff graduated from high school, began using alcohol in his teens and drank excessively into his forties, used illegal drugs on occasion in his teens and as an adult used them excessively, used cocaine from 1996 to 2000, was arrested twice in 1999 for drug possession, and at his highest level of use was spending $50 to $200 per week on cocaine. (Tr. 513-23). Dr. Bromberg also reported that Plaintiff underwent substance abuse treatment in 1999-2000, he no longer used illegal drugs, he currently might have one or two drinks per week, has heard voices since his teens, has a history of manic behaviors, and has been in psychiatric treatment since 1998 at the VA facility. *Id.* Dr. Bromberg noted that Plaintiff's psychomotor activity appeared slightly agitated, his speech was normal, his mood appeared anxious, his self-esteem appeared low, he scored in the severe depression range and in the severe anxiety range on the Burns Checklists, and that he was alert and oriented, and that he had fair concentration. *Id.* Dr. Bromberg also noted that Plaintiff reported that he hears voices on occasions despite his treatment and that his judgment appeared to be limited by his changing moods

with manic episodes, and that his insight appeared fair. *Id.* Dr. Bromberg noted further that Plaintiff's self-administered personality assessment inventory revealed a clinical profile usually associated with marked distress and severe impairment in functioning, that his diagnoses were major depressive disorder recurrent and severe with psychotic features and cocaine abuse in self-reported remission since 2000, and he assigned Plaintiff a GAF of 45. *Id.* Dr. Bromberg opined that Plaintiff's abilities to relate to others, maintain concentration, persistence and pace to perform simple repetitive tasks, and to withstand the stress and pressures associated with day-to-day work activity were markedly impaired and that his ability to understand, remember, and follow instructions was moderately impaired. *Id.* Dr. Bromberg also opined that Plaintiff's abilities to make occupational and performance adjustments were poor to none and his abilities to make personal-social adjustments were fair to poor. *Id.*

In his Statement of Errors, Plaintiff essentially alleges that the Commissioner erred by finding that prior to the expiration of his insured status, he was capable of performing a limited range of medium work because that conclusion is inconsistent with the treatment record and with Dr. Bromberg's opinion. (Doc. 10). Plaintiff's position seems to be that the Commissioner erred by rejecting Dr. Papadakis' opinion particularly because it is supported by Dr. Bromberg's opinion. *Id.*

In determining that prior to the expiration of his insured status, Plaintiff was limited to low stress work that did not involve dealing with the public, was not fast-paced, did not require strict production quotas, and did not involve team work, Judge Padilla considered the opinions of Dr. Papadakis and Dr. Bromberg as well as the opinions of Dr. Mahajan, Dr. Razik, Dr. Flexman, and the reviewing mental health experts. (Tr. 19-24). In doing so, Judge Padilla gave Dr.

9

Papadakis' opinion little weight because he failed to provide sufficient reasons for his conclusions and because his conclusions were inconsistent with Plaintiff's treatment record as well as with the other evidence of record. (Tr. 23). Judge Padilla also determined that, overall, Plaintiff's records from the VA do not support Dr. Papadakis' opinion. *Id.* This Court agrees.

First, the Court notes that while Dr. Bromberg's opinion arguably supports Dr. Papadakis' opinion, Dr. Bromberg offered his opinion in March, 2008, almost two years after the expiration of Plaintiff's insured status. Second, as Judge Padilla noted, in reaching his conclusions, Dr. Bromberg relied primarily on Plaintiff's subjective complaints. Indeed, the objective clinical findings that Dr. Bromberg reported included normal speech and, at worst, an anxious mood and low self-esteem.

Although some of Dr. Papadakis' treatment notes indicate that Plaintiff displayed psychomotor agitation, difficulty with speech, flight of ideas, and pressured speech, treatment notes by Plaintiff's other mental health care providers are inconsistent with those notes. For example, as noted above, Plaintiff's VA treatment notes reveal that over time, Dr. Razik, Plaintiff's psychiatrist at the VA, noted that Plaintiff was improving with medication. In addition, Dr. Razik noted over time that Plaintiff's affect was brighter, he was doing better overall, looked less depressed, was functioning fairly well, and that he was sleeping better. Further, in contrast to Dr. Papadakis' opinion, Dr. Stegman reported that Plaintiff reported that on testing, Plaintiff had endorsed a significantly high number of symptoms across a broad range of psychological problems, he was, at worst, mildly anxious, and that his GAF ranged from 70 to 75, reflecting, at worst, some difficulty in functioning. Moreover, Dr. Papadakis' opinion is inconsistent with Dr. Flexman's examination results and opinion. For example, Dr. Flexman noted that although Plaintiff's general body

movements were fidgety and he was anxious, his speech was appropriate, his affect was expansive, he was alert and oriented, and his concentration was good. Dr. Flexman opined that Plaintiff was, at worst, moderately impaired in his abilities to perform work-related activities. Finally, Dr. Papadakis' opinion is inconsistent with the reviewing mental health specialists' opinions. *See,* Tr. 155-72.

This Court concludes that under these facts the Commissioner did not err by rejecting Dr. Papadakis' opinion or by finding that prior to the expiration of his insured status, Plaintiff was able to perform work that did not involve dealing with the public, was not fast-paced, did not require strict production quotas, and did not involve team work

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

February 24, 2010.

s/ **Michael R. Merz**<br>United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).